United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Kevin Karpel, Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 21-24168-Civ-Scola |
| | ) | |
| Knauf Gips KG, et al., Defendants. | ) | |

### Order

This matter is before the Court upon the consolidated motion for summary judgment filed by Defendants Knauf Gips KG and Knauf New Building System (Tianjin) Co. Ltd. (**ECF No. 53**), which applies to the Plaintiffs across the Related Cases.[1] The motion has been fully briefed (ECF Nos. 53, 55, 56) and, for the reasons below, is **granted in part and denied in part**.

**1. Background**

The facts here are straightforward. The Defendants are foreign manufacturers accused of constructing defective drywalls that have been installed in homes across the country. The Plaintiffs in the Related Cases own such homes. They assert the following claims against the Defendants: negligence (Count I), negligence per se (Count II), strict liability (Count III), breach of express and/or implied warranty (Count IV), private nuisance (Count V), negligent discharge of a corrosive substance (Count VI), unjust enrichment (Count VII), and violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count VIII). (2d Am. Compl., ECF No. 28.)

Prior to appearing before this Court, the Plaintiffs' cases were handled by the Judicial Panel on Multidistrict Litigation in MDL No. 2047, *In re: Chinese-Manufactured Drywall Products Liability Litigation*, No. 2:09-md-002047 (E.D. La.). The MDL Court heard the Defendants' current motion but denied it without prejudice so that the Defendants could renew it upon the Related Cases' remand to this Court. (ECF No. 22944 in MDL No. 2047.)

---

[1] This Order applies to all the Plaintiffs identified in the Defendants' motion, which are accounted for among the following cases ("Related Cases"): Case No. 21-cv-24168-RNS; Case No. 21-cv-24171-RNS; Case No. 21-cv-24172-RNS; Case No. 21-cv-24181-RNS; Case No. 21-cv-24186-RNS; Case No. 21-cv-24191-RNS; Case No. 21-cv-24192-RNS; Case No. 21-cv-24196-RNS; Case No. 21-cv-24200-RNS; Case No. 21-cv-24201-RNS; Case No. 21-cv-24202-RNS; Case No. 21-cv-24204-RNS; Case No. 21-cv-24206-RNS; Case No. 21-cv-24208-RNS; Case No. 21-cv-24210-RNS; Case No. 21-cv-24211-RNS; Case No. 21-cv-24214-RNS; Case No. 21-cv-24216-RNS; Case No. 21-cv-24215-RNS; and Case No. 21-cv-24217-RNS.

The Defendants' motion does not argue the merits of the Plaintiffs' claims. Rather, it posits that because the Plaintiffs are not the homes' original purchasers, they are barred by "Florida's subsequent purchaser rule." (Mot. 11, ECF No. 53.) The Plaintiffs challenge the rule's existence and argue, to the extent it exists, that the rule does not apply to strict liability claims or to continuous torts, which they claim are at issue. (Opp. 6-7, ECF No. 55.) The Defendants reply that the rule does apply and that no continuing tort exists.

In support of their motion, the Defendants submitted a separate statement of undisputed material facts as required by Local Rule 56.1. (ECF No. 54.) It sets forth the circumstances by which each Plaintiff is a subsequent purchaser. The Plaintiffs did not controvert the Defendants' statement. Instead, the Plaintiffs submitted a "statement" embedded into their opposition brief that consists of nine bullet points without record citations, and which concerns facts irrelevant to the Defendants' motion. This is in clear violation of Local Rule 56.1(b). Because the facts asserted in the Defendants' statement are supported by the record (*see* ECF Nos. 52-1–52-23) and the Plaintiffs have failed to controvert them, the Court deems the Defendants' statement of undisputed material facts to be admitted under Local Rule 56.1(c).[2]

**2. Legal Standard**

Under Federal Rule of Civil Procedure 56, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *Alabama v. North Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial . . . [o]nly when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Rule 56(c) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation

---

[2] This ruling does not apply to the Blonsky Plaintiffs (Case No. 21-cv-24165) who have contested their status as subsequent purchasers through an affidavit. (ECF No. 55-4.)

marks omitted); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1984) (stating "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts").

The Court must view the evidence in the light most favorable to the nonmoving party, and summary judgment is inappropriate where a genuine issue material fact remains. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. A court may not weigh conflicting evidence to resolve disputed factual issues; if it finds a genuine dispute, summary judgment must be denied. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007).

### 3. Discussion

As a threshold matter, Florida does not appear to have a "subsequent purchaser rule," as the Defendants suggest. Subsequent purchasers are allowed to assert claims in a number of contexts. Accordingly, the Court will evaluate whether the Plaintiffs, as subsequent purchasers, may pursue each claim they assert as a matter of law.[3]

### A. Negligence and Negligent Discharge (Counts I & VI)

Florida courts have long allowed subsequent purchasers to sue for negligence, including in construction defect litigation. *See Murthy v. N. Sinha Corp.*, 644 So. 2d 983 (Fla. 1994) (citing *Gatwood v. McGee*, 475 So. 2d 720, 723 (Fla. 1st DCA 1985) ("We hold that the negligent performance of the qualifying agent's statutorily-imposed duty of supervision may support a cause of action for damages sustained by subsequent purchasers, such as the appellees, as a result of latent construction defects.")); *Parliament Towers Condo. v. Parliament House Realty, Inc.*, 377 So. 2d 976, 978 (Fla. 4th DCA 1979), *disapproved of on other grounds by Casa Clara Condo. Ass'n, Inc. v. Charley Toppino & Sons, Inc.*, 620 So. 2d 1244 (Fla. 1993) ("We have carefully reviewed the law on this point and find that privity of contract is not an

---

[3] As noted, the parties contest whether Plaintiffs Dan and Shona Blonsky are "subsequent purchasers" because they purchased their home directly from its builder. The Court finds that the Blonskys are original purchasers of their home and do not qualify as subsequent purchasers. *Cf. Hayslip v. U.S. Home Corp.*, 276 So. 3d 109 (Fla. 2d DCA July 10, 2019) (treating those who bought a home from its builder as the "original purchasers."). Nevertheless, this Order applies to the Blonskys in all respects, except where noted otherwise.

essential element in a negligence suit between a subsequent purchaser and the builder of a condominium project.").

In *Bass v. Jones*, 533 So. 2d 780 (Fla. 1st DCA 1988), for example, lessees of a residential property brought a negligence action against its previous owner for damages resulting from his installation of a fireplace that did not conform to local code. The *Bass* court upheld the cause of action, ruling that the fireplace's non-conformance constituted a latent defect that could implicate the prior owner's liability if it went undisclosed to the current owners from whom the plaintiffs leased the property. The court cited to Section 353 of the Second Restatement of Torts, *id.* at 782, which says:

> "A vendor of land who conceals or fails to disclose to his vendee any condition, whether natural or artificial, which involves unreasonable risk to persons on the land, is subject to liability to the vendee *and others upon the land with the consent of the vendee or his subvendee* for physical harm caused by the condition after the vendee has taken possession . . ."

Restatement (Second) of Torts § 353(1) (1965) (emphasis added).

Against that backdrop, the Court finds that the Plaintiffs' negligence claims may stand, despite their being subsequent purchasers.

At the same time, the Court notes that the Plaintiffs assert an additional count for negligent discharge of a corrosive object (Count VI). (2d Am. Compl ¶¶ 23-30, 71-78.) The Plaintiffs do not cite any authority that suggests Florida common law's recognition of a stand-alone tort along these lines.[4] In any event, Count VI's allegations are largely subsumed by, if not effectively the same as, those made under Count I. (*Compare* ¶ 27 ("Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the homes and personal property of Plaintiffs") *with* ¶ 73 ("Notwithstanding their actual or constructive knowledge of the corrosive and dangerous propensities of the drywall, Defendants nevertheless designed, manufactured . . . the drywall[.]").)

Against that backdrop, Count VI fails as duplicative of Count I.

### B. Negligence Per Se, Breach of Warranty, and Strict Liability (Counts II, III & IV)
#### (1) *Negligence Per Se*

Next, the Plaintiffs assert claims for negligence per se and strict liability. But these counts, again, are duplicative. "Strict liability *means* negligence as a matter of law or negligence per se, the effect of which is to remove the burden

---

[4] This tort would be distinct from the statutorily recognized cause of action for negligent hazardous spills. *See* Fla. Stat. § 768.128.

from the user of proving specific acts of negligence." *West v. Caterpillar Tractor Co.*, 336 So. 2d 80, 90 (Fla. 1976) (emphasis added). Count II, for negligence per se, thus fails as indistinct from Count III for strict liability.

### (2) *Breach of Warranty*

The Plaintiffs further assert a count for "breach of express and/or implied warranty," at Count IV. (2d Am. Compl ¶¶ 56-63.) The Defendants, they say, "and/or their agents were in privity with Plaintiffs and/or Plaintiffs [sic] were foreseeable third-party beneficiaries of any warranty." (2d Am. Compl ¶ 57.) However, the Plaintiffs, save for the Blonskys, are subsequent purchasers that do not have privity with the Defendants.

(a) *Implied Warranty*

The Florida Supreme Court supplanted no-privity causes of action for implied warranties in *West*, 336 So. 2d 80: "If a user is injured by a defective product, but the circumstances do not create a contractual relationship with a manufacturer, then the vehicle for recovery could be strict liability in tort." *Id.* at 91; *see also Kramer v. Piper Aircraft Corp.*, 520 So. 2d 37, 39 (Fla. 1988) ("*West* abolished the no-privity, breach of implied warranty cause of action for personal injury upon its adoption of the doctrine of strict liability in tort.").

Thus, it is abundantly clear that in cases like these, where no contractual relationship between a subsequent purchaser and a manufacturer exists, the former's recourse is a claim for strict liability. In this context, one Florida court reasoned, "[i]t would be strange indeed if, when the original purchaser conveyed the property to another, that his vendee could resort to the builder for damages for deficiencies in workmanship or materials which the original purchaser from the builder had accepted." *Strathmore Riverside Villas Condo. Ass'n, Inc. v. Paver Dev. Corp.*, 369 So. 2d 971, 973 (Fla. 2d DCA 1979).

The Plaintiffs' claims for breach of implied warranty fails.[5]

(b) *Express Warranty*

Claims for breach of express warranty also "generally require[ ] the parties to have contractual privity." *Aprigliano v. Am. Honda Motor Co., Inc.*, 979 F. Supp. 2d 1331, 1340 (S.D. Fla. 2013) (Altonaga, J.). However, "Florida courts have relaxed the contractual privity requirement where the express warranty was intended to benefit subsequent owners." *Id.* (citing *Mesa v. BMW*

---

[5] This ruling does not apply to the Blonsky Plaintiffs who are original purchasers. The Blonskys' claim for breach of implied warranty (presumably, of habitability) remains viable.

*of N. Am., LLC*, 904 So. 2d 450, 457-58 (Fla. 3d DCA 2005); *Fischetti v. Am. Isuzu Motors, Inc.*, 918 So. 2d 974, 976 (Fla. 4th DCA 2005)).

The trouble for the Plaintiffs is that they have put no express warranty before the Court. The relevant part of their briefing turns on case law concerning implied warranties and does not mention an express warranty. (*See* Opp. 10-12, ECF No. 55.) "A manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty." *Aprigliano*, 979 F. Supp. 2d at 1339 (quoting *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992)). Presented with no express warranty to consider, the Court finds that the Plaintiffs' claims for breach of express warranty also fail as a matter of law.

### (3) *Strict Liability*

Turning, then, to the Plaintiffs' claims for strict liability. Florida permits plaintiffs to pursue strict liability and negligence claims simultaneously. *See Mosher v. Speedstar Div. of AMCA Intern., Inc.*, 979 F.2d 823, 825 n.2 (11th Cir. 1992). "[A] manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being." *Kramer*, 520 So. 2d at 39. The doctrine is backed by society's interest in ensuring the soundness of goods placed into the stream of commerce such that manufacturers are held liable even "when harm befalls a foreseeable bystander who comes within range of the danger." *See id.*

There can be no question, then, that strict liability may apply even in the case of subsequent purchasers. The Florida Supreme Court's adoption of Section 402A of the Restatement (Second) of Torts in *West*, 336 So.2d at 87, makes this clear. That provision states:

> "(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to <u>the ultimate user or consumer</u>, or to his property, if
> > (a) the seller is engaged in the business of selling such a product, and
> > (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
> (2) The rule stated in Subsection (1) applies although
> > (a) the seller has exercised all possible care in the preparation and sale of his product, and

>> (b) *the user or consumer has not bought the product from or entered into any contractual relation with the seller*."

Restatement (Second) of Torts § 402A (1965) (emphasis added).

This conclusion is bolstered by the fact that the Florida legislature has expressly recognized subsequent purchasers' rights in construction defect litigation. Chapter 558 of the Florida Statutes, which governs such disputes, defines a "claimant" to mean "a property owner, *including a subsequent purchaser* or association, who asserts a claim for damages against a contractor, subcontractor, supplier, or design professional concerning a construction defect *or a subsequent owner* who asserts a claim for indemnification for such damages." Fla. Stat. § 558.002(3) (emphasis added).[6]

The Court finds no tension between its conclusion and the MDL Court's finding that certain Louisiana plaintiffs were barred given their status as subsequent purchasers. In so finding, the MDL Court was applying Louisiana law, which seems to formally recognize a "subsequent purchaser doctrine." *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 14-2722, 2020 WL 4923150, at *5 (E.D. La. Aug. 21, 2020). The Defendants' suggestion that the court of *In re Gilley*, 236 B.R. 448, 452 (Bankr. M.D. Fla. 1999), recognized a parallel doctrine in Florida is flawed.

The *Gilley* court narrowly noted that "Florida law *is not necessarily inconsistent* with *Schrewe*," a Louisiana case that found damages for an item's "partial destruction" or "interference" to be personal to whomever "was owner at the time of the expropriation, destruction or interference." *Id.* at 452 (emphasis added). To back this narrow observation, the *Gilley* court cited to *Department of Transportation v. Burnette*, 384 So. 2d 916 (Fla. 1st DCA 1980).

*Burnette*, in turn, involved the question of a person's entitlement to compensation for a taking. That court espoused the notion that the right to compensation "vests in the person owning the property at the time of such interference" on the theory that "where the government interferes with a person's property to such a substantial extent, the owner has lost a part of his interest in the real property." *Burnette*, 384 So. 2d at 920 (quoting *Brooks Inv. Co. v. City of Bloomington*, 305 Minn. 315-16 (1975)). Aside from being decided in a different context, *Burnette* also cited to authorities that pre-date *West*, which directly controls claims for strict liability.

Although the Court finds nothing wrong with the observation in *Gilley*, the Court declines to follow it as precedent recognizing a "subsequent

---

[6] Florida requires construction defect claimants to comply with the requirements of Chapter 558 before proceeding to court. *See* Fla. Stat. § 558.002. The parties have not briefed issues concerning those provisions. As such, the Court does not address them in this Order.

purchaser doctrine" in Florida. Indeed, *Gilley* only stands for the narrow premise that Florida and Louisiana law are not entirely inconsistent on matters concerning personal property rights.

That notwithstanding, it is true that Florida courts have placed limits on recovery for strict liability. First, Florida disallows recovery in tort where plaintiffs only claim economic losses such as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property." *See Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Co.*, 110 So. 3d 399, 401 (Fla. 2013). As one court aptly pointed out, "the strict liability principle of *West* was announced with respect to <u>physical harm</u> caused by the defective product." *Strathmore Riverside Villas Condo. Ass'n, Inc. v. Paver Dev. Corp.*, 369 So. 2d 971, 973 n.3 (Fla. 2d DCA 1979) (emphasis added).

Second, Florida courts will disallow recovery for strict liability where the purchaser was subject to the common law doctrine of *caveat emptor. See, e.g., Cataldo v. Lazy Days R.V. Ctr., Inc.*, 920 So. 2d 174, 180 (Fla. 2d DCA 2006), *review denied*, 929 So. 2d 1051 (Fla. 2006); *Mostoufi v. Presto Food Stores, Inc.*, 618 So. 2d 1372, 1377 (Fla. 2d DCA 1993), *abrogated on other grounds by Aramark Unif. & Career Apparel, Inc. v. Easton*, 894 So. 2d 20 (Fla. 2004).

*Futura Realty v. Lone Star Building Centers (E.), Inc.*, 578 So. 2d 363 (Fla. 3d DCA 1991), cited by the Defendants, serves as an example. That court held that subsequent purchasers' strict liability claims were unactionable because, "[a] commercial property vendor owes no duty for damage to the land to its vendee because the vendee can protect itself in a number of ways, including careful inspection and price negotiation." *Id.* at 365. However, *Futura* involved a commercial sale, to which *caveat emptor* applies. *See id.* at 364 (discussing *caveat emptor*); *Hayim Real Estate Holdings, LLC v. Action Watercraft Int'l, Inc.*, 15 So. 3d 724, 726 (Fla. 3d DCA 2009) ("*Futura* stands for the doctrine of *caveat emptor* with regard to the sale of commercial real property[.]").

Although the doctrine generally does not apply to the sale of homes, *see Lorber v. Passick*, 327 So. 3d 297, 306-07 (Fla. 4th DCA 2021), it <u>does</u> apply to residential properties purchased at judicial auction sales. *See Flanco Condo. Ass'n v. Goldszer*, 229 So. 3d 345 (Fla. 3d DCA 2016) (Shepherd, J.) (dissenting); *U.S. Bank, Nat'l Ass'n v. Rios*, 166 So. 3d 202, 211 (Fla. 2d DCA 2015); *CCC Props., Inc. v. Kane*, 582 So. 2d 159, 161 (Fla. 4th DCA 1991).

Thus, at least two limitations to strict liability apply: (1) where a plaintiff only alleges economic losses, and, separately (2) where the purchaser was subject to the doctrine of *caveat emptor*.

The Defendants seem to suggest a third limitation: that "[w]here the cause of action arises out of an injury to property, that action is personal to the

owner of the property and a party who subsequently takes title to the property, without receiving an assignment of that cause of action, may not pursue that cause of action." *Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So. 2d 490, 496 (Fla. 3d DCA 1994). However, such a limitation would be inapplicable here.

*Ginsberg* and the case law it cites dealt with damage to the subject property alone. *Id.* at 496 (citing *Selfridge v. Allstate Ins.*, 219 So. 2d 127 (Fla. 1969); *Florida Power Corp. v. McNeely*, 125 So. 2d 311 (Fla. 1960); *State Road Dep't v. Bender*, 2 So. 2d 298 (Fla. 1941)). By contrast, central to the Plaintiffs' theory of recovery is their allegation that the Defendants' drywalls emit substances that have injured the Plaintiffs personally and their personal property. (2d Am. Compl ¶ 21.) The distinction between subject property (i.e. the property giving rise to the claim) and "other property" is well-established such that an exception to the economic loss rule exists to allow recovery for damages to "other property." *Tiara*, 110 So. 3d at 446; *see also East River Steamship Corp. v. TransAm. Delaval, Inc.,* 476 U.S. 858 (1986); *Sbarbaro v. Yacht Sales Intern., Inc.*, 1995 WL 822628, at *8 (S.D. Fla. Oct. 10, 1995) (Marcus, J.).

Even more, *Ginsberg* was decided on the basis of what the Florida Supreme Court now recognizes to be a flawed application of the economic loss rule. Back then, courts applied the economic loss rule to bar recovery in two scenarios. "The first [was] when the parties [were] in contractual privity and one party [sought] to recover damages in tort for matters arising from the contract. The second [was] when there [was] a defect in a product that cause[d] damage to the product but cause[d] no personal injury or damage to other property." *Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004). In 2013, the Florida Supreme Court ruled that only the second application of the rule was correct—not the first, on which *Ginsberg* relies. *See id.* (citing *Ginsberg* in support of the now-defunct application of the rule); *Tiara*, 110 So. 3d 399 (abrogating the first application of the rule); *Tiara Condo. Ass'n, Inc. v. Marsh USA, Inc.*, 991 F. Supp. 2d 1271, 1279 (S.D. Fla. 2014) (Hurley, J.) (recognizing the abrogation).

Accordingly, *Ginsberg* does not change the Court's analysis. The Plaintiffs' claims for strict liability are indeed viable against the Defendants, provided that: (1) they seek damages that are not precluded by the economic loss rule, and (2) they did not purchase their homes at judicial auction sales or are otherwise subject to the doctrine of *caveat emptor*.[7]

---

[7] The record shows that Plaintiff Santiago Guzman (Case No. 21-cv-24202) indisputably purchased his home at a judicial auction sale and is thus barred from seeking damages in strict liability. (Depo. of Santiago Guzman 33:18-20, ECF No. 52-21.) The same applies for his

### C. Private Nuisance (Count V)

Next, the Plaintiffs assert claims for private nuisance. Florida "recognizes that the law of private nuisance is bottomed on the fundamental rule that every person should so use his own property as not to injure that of another[.]" *Jones v. Trawick*, 75 So. 2d 785, 787 (Fla. 1954).

Thus, integral to the notion of a private nuisance is the *use* of one's property in a way that is somehow *adverse* to another's interest in *their* property. *See, e.g.*, *Durrance v. Sanders*, 329 So. 2d 26, 29 (Fla. 1st DCA 1976) (requiring a showing that the nuisance be "proximately caused by some activity on the part of appellants"); 38 Caralyn M. Ross & Mark T. Roohk, Fla. Jur. 2d *Nuisances* § 1 (2022) ("Although a comprehensive definition of a nuisance is not possible, as each case must turn upon its facts and be judicially determined, a nuisance, in law, generally consists of using one's property so as to injure the land or some incorporeal right of one's neighbor."); 6 Turner W. Branch & Margaret M. Branch, *Litigating Tort Cases* § 67:7 (2021) (noting the "historic role that the law of private nuisance has played as a means of efficiently resolving conflicts between neighboring, contemporaneous land uses[.]").

The Plaintiffs—who own the drywall they complain of—assert their claims for private nuisance on the allegation that the drywalls' purported defects interfere with their "health, comfort, safety, free use of their property, and/or peaceful enjoyment of their property." (2d Am. Compl ¶ 66.) However, there seems to be no precedent in Florida for allowing a property owner to sue that property's manufacturer on a private nuisance theory by reason of the property's alleged defects.

As the Middle District of Florida has noted: "private nuisance law has been restricted to situations involving *discordant* land uses . . . and not as an additional type of consumer protection for purchasers of realty." *Jerue v. Drummond Co.*, No. 8:17-cv-587-T-17AEP, 2017 U.S. Dist. LEXIS 223245, at *43 (M.D. Fla. Aug. 17, 2017) (emphasis in original); *see also O'Conner v. Vedovitch*, No. 30-2017-00899728-CU-OR-CJC, 2019 Cal. Super. LEXIS 66538, at *3 (Aug. 8, 2019) ("In construction defect cases the appellate court has held that the liability claim should be litigated as a traditional tort, not as a nuisance cause of action. Any other result would allow nuisance to become a monster that would devour in one gulp the entire law of torts.") (cleaned up).

---

negligence claim. *See Haskell Co. v. Lane Co., Ltd.*, 612 So. 2d 669, 670 (Fla. 1st DCA 1993), *review denied*, 612 So. 2d 669. The Defendants' motion is thus **granted** as to Mr. Guzman's strict liability and negligence claims.

And even then, "[t]o establish a cause of action for nuisance, plaintiff must show . . . [among others,] that [a] defendant's maintenance of the nuisance was the proximate cause of injury to plaintiff." *Williams Farms P'ship v. Am. Citrus Prods. Corp.*, No. 2:06-cv-519-FtM-29DNF, 2008 U.S. Dist. LEXIS 110799, at *11-12 (M.D. Fla. Oct. 27, 2008) (citing *Durrance v. Sanders*, 329 So. 2d 26 (Fla. 1st DCA 1976)).

The Plaintiffs' ownership and current control over the drywall conclusively forecloses them from arguing that the Defendants actively "maintain" the "nuisance" they complain of. *See Penelas v. Arms Tech., Inc.*, 99-1941 CA-06, 1999 WL 1204353, at *4 (Fla. Cir. Ct. Dec. 13, 1999), *aff'd*, 778 So. 2d 1042 (Fla. 3d DCA 2001) ("Furthermore, a party cannot be held liable for nuisance absent control of the activity which creates the nuisance.").

For these reasons, the Plaintiffs' private nuisance claims fail.

### D. Unjust Enrichment (Count VII)

Now for the Plaintiffs' claims of unjust enrichment: "A claim for unjust enrichment has three elements: (1) the plaintiff has conferred a [direct] benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012); *Wilson v. EverBank, N.A.*, 77 F. Supp. 3d 1202, 1236 (S.D. Fla. 2015) (Bloom, J.) (Florida law requires a *direct* benefit).

The Plaintiffs' status as subsequent purchasers leads the Court to conclude that their unjust enrichment claims must fail. The Plaintiffs conferred no direct benefit on the Defendants. Although the Plaintiffs assert that the "Defendants received money as a result of Plaintiffs' purchase of Defendants' defective drywall, or purchase of homes containing this drywall, either directly or through an agent[,]" (2d Am. Compl ¶ 80) the record before this Court bears no evidence of this.

The Court makes this ruling despite previously acknowledging that "no direct contact is required for a direct benefit to be conferred." *Melton v. Century Arms, Inc.*, 243 F. Supp. 3d 1290, 1307 (S.D. Fla. 2017) (Moreno, J.); *see also Zaki Kulaibee Establishment v. McFlicker*, 788 F. Supp. 2d 1363, 1376–77 (S.D. Fla. 2011) (Cooke, J.); *Romano v. Motorola, Inc.*, 07-CIV-60517, 2007 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007) (Brown, Mag. J.). That reasoning has been applied in cases distinguishable from this one, where the normal course of conduct *required* plaintiffs to confer benefits upon defendants through intermediaries.

An example is *Romano*, a putative class action for defects related to the Motorola Razr. There, this Court allowed subsequent purchasers to sue for unjust enrichment, reasoning that "[w]hile the phone is ultimately sold through the retailer, Motorola directly benefitted through profits earned from the sale of the phone." *Romano*, 2007 WL 4199781, at * 2.

However, the Plaintiffs here, as subsequent purchasers, obtained their homes—and thus the drywalls they sue on—from previous owners. The financial benefit of those purchases went directly to the previous owners, not the Defendants. *Cf. Extraordinary Title Services, LLC v. Florida Power & Light Co.*, 1 So. 3d 400, 404 (Fla. 3d DCA 2009) (no direct benefit to a parent company where the plaintiff paid its subsidiary).

Accordingly, the Plaintiffs' unjust enrichment claims fail.[8]

### E. FDUTPA (Count VIII)

Last, the Plaintiffs' FDUTPA claims are not barred by the Plaintiffs' status as subsequent purchasers.

"A consumer claim under FDUTPA must have three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. As the Eleventh Circuit has noted, to prove the causation element of a FDUTPA claim, a plaintiff need not prove reliance on the allegedly false statement . . . but rather a plaintiff must simply prove that an objectively reasonable person would have been deceived." *Lombardo v. Johnson & Johnson Consumer Companies, Inc.*, 124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015) (Scola, J.) (cleaned up) (citing *Fitzpatrick v. General Mills, Inc.*, 635 F.3d 1279, 1283 (11th Cir. 2011)); *see also State, Office of Atty. Gen., Dept. of Legal Affairs v. Wyndham Intern., Inc.,* 869 So. 2d 592, 598 (Fla. 1st DCA 2004) ("when addressing a deceptive or unfair trade practice claim, the issue is not whether the plaintiff actually relied on the alleged practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances.").

To recall, the Defendants' motion only challenges Plaintiffs' ability to bring their claims on account of their status as subsequent purchasers. Because the law is clear that a plaintiff need not have actually relied on the purported deceptive or unfair practice, the Court's analysis need not go further. The Plaintiffs' status as subsequent purchasers does not foreclose them from

---

[8] This ruling does not apply to the Blonsky Plaintiffs who are original purchasers and directly benefitted the Defendants by purchasing the drywall via the intermediary homebuilders. *See Romano*, 2007 WL 4199781, at * 2. The Blonskys' unjust enrichment claim remains viable.

arguing that the Defendants' practices violated FDUTPA. The Plaintiffs' FDUTPA claims survive the Defendants' challenge.

However, the Court notes that "[a]ctual damages, for purposes of a claim under [FDUTPA] are the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." Rachel M. Kane & Kimberly C. Simmons, 10A Fla. Jur. 2d Consumer Etc. Protection § 164 (2022). This would seem to implicate the economic loss rule. *See Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Co.*, 110 So. 3d 399, 401 (Fla. 2013). Therefore, the Court must consider whether Plaintiffs' FDUTPA claims are redressable before allowing those claims to move forward.

The Court **orders** each side to submit a consolidated supplemental brief, no later than **September 30, 2022**, which sets forth arguments on whether the Plaintiffs' FDUPTA claims must fail under Florida's economic loss rule. No responses or replies will be allowed. Each brief must conform to the formatting requirements in the Local Rules and may not exceed five pages in length.

### 4. Conclusion

In light of the foregoing, the Defendants' motion for summary judgment (**ECF No. 53**) is **granted in part and denied in part** as follows:

(i) Except as specified in paragraph (ii), the Plaintiffs' claims for negligence per se (Count II), breach of express/implied warranty (Count IV), private nuisance (Count V), negligent discharge of a corrosive substance (Count VI), and unjust enrichment (Count VII) **fail**, and the Court **grants** summary judgment in favor of the Defendants on those counts;

(ii) Notwithstanding paragraph (i), the Blonsky Plaintiffs' claims for breach of implied (not express) warranty (Count IV), and unjust enrichment (Count VII) **remain viable** and the Court **denies** the Defendants summary judgment in respect of these counts as to the Blonskys only;

(iii) Except as specified in paragraph (iv), all Plaintiffs' claims for negligence (Count I) and strict liability (Count III) **remain viable**, and the Court **denies** the Defendants summary judgment in respect of these counts;

(iv) Notwithstanding paragraph (iii), the Court **grants** the Defendants summary judgment as to Counts I and III in the case of Plaintiff

>> Santiago Guzman—and in the case(s) of any other Plaintiff(s) similarly identified pursuant to the Court's directive below;

(v) The Court withholds its ruling concerning the Plaintiffs' FDUTPA claims pending the supplemental briefing it has ordered above.

Further to paragraph (iv), the Court **orders** the parties to file a joint notice no later than **September 30, 2022**, which advises the Court of:

(1) All Plaintiffs that purchased their homes at judicial auction sales; and

(2) Any ruling by the MDL Court in respect of Chapter 558 relating to the Plaintiffs and/or their claims.

If the MDL Court has not issued rulings concerning Chapter 558 as described above, each side must submit a consolidated supplemental brief, no later than **October 7, 2022**, setting forth arguments as to whether and/or how Chapter 558 affects any of the Plaintiffs' claims. No responses or replies will be allowed. Each brief must conform to the formatting requirements in the Local Rules and may not exceed five pages in length.

**Done and ordered**, in chambers in Miami, Florida on September 20, 2022.

_____
Robert N. Scola, Jr.
United States District Judge