United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Kevin Karpel, Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 21-24168-Civ-Scola |
| ) | |
| Knauf Gips KG, et al., Defendants. ) | |

**Supplemental Order on the Defendants' Motion for Summary Judgment**

This matter is before the Court upon the parties' supplemental briefs concerning the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") and Florida Statutes Chapter 558. (ECF Nos. 61, 62, 68, 69.) The Court ordered the parties to submit these briefs in its Order on the Defendants' consolidated motion for summary judgment. (ECF No. 58.)

Having reviewed the parties' submissions, the legal authorities, and the record, the Court finds the Plaintiffs' FDUTPA claims to be barred by Florida's economic loss rule, and the remainder of the Plaintiffs' claims unaffected by Chapter 558.

### 1. The Plaintiffs' FDUTPA Claims

The first matter under consideration is whether the Plaintiffs' FDUTPA claims are viable in light of Florida's economic loss rule. Under it, parties may not recovery for pure economic loss in products liability cases. *See Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Co.*, 110 So. 3d 399, 401 (Fla. 2013).

In its previous Order, the Court noted that "[a]ctual damages, for purposes of a claim under [FDUTPA] are the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." (ECF No. 58 at 13 (cleaned up).) In some cases, actual damages may alternatively be calculated as "the total price paid for a valueless good or service." *Harrison v. Lee Auto Holdings, Inc.* 295 So. 3d 857, 864 (Fla. 1st DCA 2020). In either scenario, these damages doubtlessly refer to economic losses, which the Florida Supreme Court has defined to consist of "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property." *See Tiara*, 110 So. 3d at 401.

Nevertheless, the Plaintiffs say the economic loss rule does not bar their recovery under FDUTPA for two reasons. First, because the law of the case doctrine requires the Court to uphold the MDL Court's ruling that the Plaintiffs'

suit was not barred by the rule. And second, because the Plaintiffs claim losses beyond those related to the purportedly defective drywall. Neither reason convinces the Court. (*See* ECF No. 62.)

*First*, the Court notes that the MDL Court did not consider whether the economic loss rule precludes the Plaintiffs' FDUTPA claims specifically. Rather, in analyzing the sum of the Plaintiffs' claims, the MDL Court found that the Plaintiffs' claims generally did not involve "economic losses caused by a defective product." (ECF No. 62-1 at 24-25.) Nowhere did the MDL consider that FDUTPA itself limits recovery to economic losses.

Additionally, even assuming that the law of the case doctrine applies, it is not binding where "subsequently released controlling authority dictates a contrary result." *Singleton v. Dep't of Corr.*, 323 Fed. Appx. 783, 785 (11th Cir. 2009). The MDL Court made its decision in 2010. It based its analysis on *Casa Clara Condominium Association, Inc. v. Charley Toppino & Sons, Inc.*, 620 So. 2d 1244 (Fla. 1993) and *Indemnity Insurance Co. of North America v. American Aviation, Inc.*, 891 So. 2d 532 (Fla. 2004), both of which the Florida Supreme Court receded from in *Tiara*, 110 So. 3d at 407. Therefore, this Court is not constrained by the MDL Court's ruling, which was made 12 years ago.

*Second*, while it is true that the Plaintiffs claim damages beyond those relating to the purportedly defective drywall, that does not change the fact that FDUTPA *only* allows for the recovery of economic losses relating to the value of a defective product. The statute explicitly disallows recovery of personal injury or separate property damage. *See* Fla. Stat. § 501.212(3) (disallowing "[a] claim for personal injury or death or a claim to property other than the property that is the subject of the consumer transaction."). Thus, the Plaintiffs' very own argument shows that FDUTPA is not the correct vehicle for their purported recovery. Rather, their claims for strict liability and negligence are.

Indeed, "the essence of the early holdings discussing the [economic loss] rule is to *prohibit a party from suing in tort for purely economic losses* to a product or object provided to another for consideration, the rationale being that in those cases contract principles are more appropriate than tort principles for resolving economic loss without an accompanying physical injury or property damage." *Tiara*, 110 So. 3d at 405 (cleaned up) (emphasis added). But, to be sure, the rule "applies even in the absence of privity of contract[,]" as is the case here. *Id.* (cleaned up).

Because *Tiara* explicitly disallowed the recovery of economic losses in the products liability context and FDUTPA only allows for the recovery of economic losses, the Plaintiffs' FDUTPA claims must fail as a matter of law in this products liability case.

Now, it is true that courts pre-*Tiara* acknowledged the existence of an exception to the rule for free-standing statutory causes of action. *See, e.g., Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*, 693 So. 2d 602 (Fla. 2d DCA 1997) (holding that the economic loss rule did not bar a FDUTPA claim). However, *Tiara* sought to do away with "the creation of exceptions to the rule." 110 So. 3d at 407. Among such exceptions were those created for claims involving "professional malpractice, fraudulent inducement, and negligent misrepresentation, [and] *free-standing statutory causes of action.*" *Id.* at 406 (emphasis added).

Although this Court appears to be among the first to consider, post-*Tiara*, whether the economic loss rule bars a FDUTPA claim in the products liability context,[1] this Court *has* previously interpreted *Tiara* to abrogate the fraudulent inducement and negligent misrepresentation exceptions to the rule in the products liability context. *See In re Takata Airbag Products Liab. Litig.*, 193 F. Supp. 3d 1324, 1339 (S.D. Fla. 2016) (Moreno, J.)[2] (citing *Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1337–39 (S.D. Fla. 2013) (Altonaga, J.); *Burns v. Winnebago Indus., Inc.*, No. 8:13–cv–1427–T–24, 2013 WL 4437246, at *4 (M.D. Fla. Aug. 16, 2013)). It is in-line with this Court's precedent, then, to now hold that *Tiara* also abrogated any exception to the economic loss rule for "free-standing statutory causes of action[,]" including FDUTPA, in the products liability context.

Accordingly, the Court enters summary judgment in favor of the Defendants on the Plaintiffs' FDUTPA claims.

The effect of this ruling is as follows: in respect of the Plaintiffs identified in the Defendants' motion,[3] only their claims for strict liability and negligence

---

[1] In one sentence with no analysis, a state trial court ruled that the economic loss rule did not bar a FDUTPA claim in *Hanson v. Renaissance Sch.*, No.15-CA-794, 2016 Fla. Cir. LEXIS 30640 (Fla. Cir. Ct. Mar. 2, 2016). Aside from being decided in a non-products liability context, the decision also cited to *Delgado*, 693 So. 2d 602. As noted, *Delgado's* free-standing tort exception was abrogated by *Tiara*.

[2] The Court did not rule on whether the economic loss rule barred FDUTPA claims in *Takata* and allowed them to survive a motion to dismiss.

[3] The Plaintiffs identified in the Defendants' motion are those in the following cases: Case No. 21-cv-24168-RNS; Case No. 21-cv-24171-RNS; Case No. 21-cv-24172-RNS; Case No. 21-cv-24181-RNS; Case No. 21-cv-24186-RNS; Case No. 21-cv-24191-RNS; Case No. 21-cv-24192-RNS; Case No. 21-cv-24196-RNS; Case No. 21-cv-24200-RNS; Case No. 21-cv-24201-RNS; Case No. 21-cv-24202-RNS; Case No. 21-cv-24204-RNS; Case No. 21-cv-24206-RNS; Case No. 21-cv-24208-RNS; Case No. 21-cv-24210-RNS; Case No. 21-cv-24211-RNS; Case No. 21-cv-24214-RNS; Case No. 21-cv-24216-RNS; Case No. 21-cv-24215-RNS; and Case No. 21-cv-24217-RNS.

may survive summary judgment.[4] That holding, though, is conditional on each such Plaintiff's not being subject to the doctrine of *caveat emptor*.

### 2. Plaintiff Elvis Ferrera

This raises a housekeeping matter. In its previous Order the Court required the parties to jointly submit a notice identifying all Plaintiffs that purchased their homes at judicial auction sales and are therefore subject to Florida's doctrine of *caveat emptor*. However, the Defendants filed an unopposed motion for leave to file unilateral additional notice in response to the Court's Order (Mot., ECF No. 60) because the parties have disagreed as to whether Plaintiff Elvis Ferrera (Case No. 22-cv-24208, purchaser of the property located at 22079 SW 88th Path, Cutler Bay, Florida 33190) should also be subject to the doctrine of *caveat emptor*. The Court granted that motion. (ECF No. 63.)

The Defendants assert that Mr. Ferrera "purchased the property as an investment and puts it to a commercial, rather than residential, use." (Mot. 1-2.) The Plaintiffs "do not oppose the specific relief requested . . . (*i.e.*, permission to file the unilateral notice), but . . . wish to be provided with an opportunity to object or oppose the Knauf Defendants' suggestion that the caveat emptor doctrine applies to Mr. Ferrera. (*Id.* at 2.)

The Defendants cite to *Agrobin, Inc. v. Botanica Development Associates, Inc.* for the proposition that Florida's doctrine of *caveat emptor* applies to individuals who purchase property for commercial or investment purposes. (Mot. 2 (citing 861 So. 2d 445, 446 (Fla. 3d DCA 2003).) The Third District Court of Appeal observed that, although "the Florida Supreme Court had abolished the doctrine of *caveat emptor* on the sale of new or used homes" in *Johnson v. Davis*, that "did not extend the duty to disclose to commercial transactions." *Agrobin*, 861 So. 2d at 446 (citing 480 So. 2d 625, 629 (Fla. 1985)). *Agrobin* further expressly states that "a sophisticated purchaser of commercial property who agreed to an 'as is' purchase contract, had ample opportunity to conduct inspections, and could have discovered an alleged defect through the exercise of ordinary diligence, may be disgruntled, but does not have a cause of action for fraud." The Fourth District Court of Appeal has similarly observed that *caveat emptor* does not apply to buyers of real estate for commercial purposes. *Florida Holding 4800, LLC v. Lauderhill Mall Invest., LLC*, 317 So. 3d 121, 122, 125 (Fla. 4th DCA 2021).

---

[4] Notwithstanding this ruling, the Blonsky Plaintiffs' (Case No. 21-cv-24165) remaining viable claims are those for strict liability, negligence, unjust enrichment, and breach of express warranty for the reasons explained in the Court's previous Order.

Because the doctrine of *caveat emptor* applies to commercial purchasers under Florida law, the Defendants may submit their proposed unilateral additional notice regarding Mr. Ferrera. The Plaintiffs, however, shall have the opportunity to submit objections to the notice contesting whether Mr. Ferrera may properly be considered a commercial purchaser.

The Court instructs the Defendants to file their unilateral notice (ECF No. 60-1) in the docket for Mr. Ferrera's case by **October 17, 2022**. Mr. Ferrera may file, in the docket for his case, an objection to the unilateral additional notice that does not exceed five pages by **October 21, 2022**.

### 3. Florida Statutes Chapter 558

Last, in its previous Order, the Court also noted that "Florida requires construction defect claimants to comply with the requirements of Chapter 558 before proceeding to court. *See* Fla. Stat. § 558.002." (ECF No. 58 at 7 n.6.) As such, the Court instructed the parties to brief "whether and/or how Chapter 558 affects any of the Plaintiffs' claims." (*Id.* at 14.) Both parties seem to agree that Chapter 558 does not affect the viability of the Plaintiffs' claims. Accordingly, no further analysis is required.

**Done and ordered**, in chambers in Miami, Florida on October 13, 2022.

_____
Robert N. Scola, Jr.
United States District Judge